UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-cv-11869-RGS

PHILIBERT KONGTCHEU

v.

COMCAST CORPORATION, COMCAST REPRESENTATIVE X, COMCAST
REPRESENTATIVE BHAVYA, COMCAST REPRESENTATIVE CURTIS
XFINITY - EXECUTIVE CUSTOMER RELATIONS, COMCAST
REPRESENTATIVE GABRIELLE K. XFINITY - EXECUTIVE CUSTOMER
RELATIONS, COMCAST REPRESENTATIVE CHERYL L. XFINITY -
EXECUTIVE CUSTOMER RELATIONS, and CREDENCE RESOURCE
MANAGEMENT, LLC

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANT CREDENCE
RESOURCE MANAGEMENT, LLC AND ON CREDENCE RESOURCE
MANAGEMENT, LLC'S CROSS MOTION FOR SUMMARY JUDGMENT

March 18, 2026

STEARNS, D.J.

Defendant Credence Resource Management, LLC (CRM), is a debt collection agency that was engaged by Xfinity Mobile (Xfinity), which is owned by defendant Comcast Corporation (Comcast), to collect a debt that Xfinity claimed plaintiff Philibert Kongtcheu owed to Comcast. *See* Notice of Removal, Ex. A (Compl.) [Dkt # 1-1] at 14. Kongtcheu disputes the validity of the debt. *Id.* at 3-9. He argues that CRM violated The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and Massachusetts debt

collection regulations by claiming in its collection demand that the debt was validly owed.  Compl. at 19-20.  He also claims that CRM failed to provide information required by the applicable debt collection regulations.[1]  *Id.* at 20-21.  Kongtcheu now moves for summary judgment against CRM.  Pl.'s Mot. for Partial Summ. J. against CRM (Pl.'s Mot. for Summ. J.)  [Dkt #19] at 1.[2]  CRM opposes Kongtcheu's motion and cross-moves for summary judgment in its favor.  Def.'s Cross Opp'n [Dkt. #41] at 1.

This case began on May 28, 2025, when Kongtcheu filed suit in the Middlesex Superior Court against CRM and six other defendants.[3]  It was subsequently removed to federal court by CRM on July 1, 2025.  Kongtcheu's disputes with the other six defendants named in the Complaint (including

---

[1] Collectively, these alleged violations comprise Count 5 of the Complaint.  Compl. at 19-21.

[2] Kongtcheu characterizes this as a motion for "partial" summary judgment, presumably because his motion is limited to claims against CRM and no other defendants in the case.  However, for clarity, the court refers to this as a motion for summary judgment because it pertains to all claims in the Complaint against CRM.

[3] The other defendants named in the Complaint are Comcast Corporation, Comcast Representative X, Comcast Representative Bhavya, Comcast Representative Curtis Xfinity - Executive Customer Relations, Comcast Representative Gabrielle K. Xfinity - Executive Customer Relations, and Comcast Representative Cheryl L. Xfinity - Executive Customer Relations.

Comcast) were sent to arbitration, pursuant to this court's December 30, 2025 order. [Dkt # 72].

Kongtcheu alleges that Xfinity billed him for mobile service and a mobile device that he did not order. Compl. at 3-9. Kongtcheu challenged Xfinity's bills for these disputed items and did not pay them, leading Xfinity to engage CRM to collect the debt that Xfinity claimed he owed. *Id.* at 14. Kongtcheu alleges various claims that stemmed from these events and their aftermath,[4] and he seeks monetary relief as well as costs and attorney's fees. *Id.* at 15-22. For the following reasons, the court denies Kongtcheu's motion for summary judgment against CRM and allows CRM's cross-motion for summary judgment.[5]

---

[4] The aftermath included Kongtcheu filing complaints with the Massachusetts Department of Telecommunications and Cable, Massachusetts Office of the Attorney General and the Federal Communications Commission. *Id.* at 11-13.

[5] Following Kongtcheu's August 21, 2025 motion for summary judgment and CRM's October 9, 2025 cross-motion for summary judgment, Kongtcheu filed a motion to amend the Complaint on December 17, 2025. [Dkt # 66]. (Kongtcheu initially moved to amend the Complaint on August 4, 2025, but this court denied the motion without prejudice because CRM had filed a responsive pleading more than 21 days prior, *see* Fed. R. Civ. P. 15 (a)(1), and Kongtcheu's motion did not include a proposed Amended Complaint or an explanation for why the amendment was requested. [Dkt # 16]. Kongtcheu subsequently moved for an extension to amend the Complaint by December 17, 2025, which this court granted. [Dkt # 64]. In the course of extending the deadline, this court noted that "futile" claims would not be appropriate. [Dkt # 30].)

## BACKGROUND

Comcast's Xfinity Mobile engaged CRM to collect the alleged debt owed by Kongtcheu on October 21, 2024.  Def.'s Statement of Facts [Dkt. # 41-2] at 4.  Between October 23, 2024, and November 13, 2024, CRM made

---

The proposed amended Complaint, filed with Kongtcheu's motion to amend on December 17, 2025, includes several new claims against CRM. Mot. to Amend Compl., Ex. A (Proposed Am. Compl.) [Dkt # 66-1] ¶¶ 138-154.  The court denies the motion to amend given First Circuit precedent and the applicable federal Rule.

"A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12. (1st Cir. 2004).  Initially, "[c]onsent to file amended pleadings 'shall be freely given when justice so requires,' unless the amendment would be futile or reward undue delay." *Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006), quoting Fed. R. Civ. P. 15(a).  However, "[t]he bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate 'that the proposed amendments were supported by substantial and convincing evidence.'" *Id.*, quoting *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994).

Kongtcheu's proposed Amended Complaint, filed after the motions for summary judgment, adds the following claims against CRM, which are not alleged in the original Complaint: violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), intentional infliction of emotional distress, violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I, violation of M.G.L. c. 93A, abuse of process, civil conspiracy, and aiding and abetting. Proposed Am. Compl. ¶¶ 138-154.  Given the lack of substantial and convincing support for the new claims, as well as the prejudice inherent in their late filing, the court denies Kongtcheu's motion to amend the Complaint with respect to CRM.

frequent[6] calls to Kongtcheu, but "[n]one of the calls connected to a person and CRM did not leave any voicemails," according to the sworn affidavit of Denise Lewis, CRM's Associate Vice President of Risk Compliance.  Lewis Aff. [Dkt # 77] at 2.[7]  Kongtcheu disputes this point, stating that he picked up "at least one call."  Pl.'s Resp. to Def.'s Statement of Facts at 4.

On October 23, 2024, CRM sent a demand letter to Kongtcheu, stating that "[w]e are trying to collect a debt that you owe to Xfinity Mobile."  Pl.'s Mot. for Summ. J., Ex. D [Dkt #19-4] at 40.  In the letter, CRM stated that Kongtcheu owed Xfinity Mobile $404.56, but that a payment of $327.69 by December 30, 2024, would be sufficient to "resolve your account."  *Id*.  The $404.56 amount referenced in CRM's letter to Kongtcheu was consistent with the amount included in written communications from Xfinity Mobile to Kongtcheu on October 19, 2024, and November 22, 2024.  *See Id*. at 20, 50.

On November 4, 2024, Kongtcheu replied to CRM in a letter, stating: "This will serve as your legal notice pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, to cease and desist all further communication

---

[6] Kongtcheu alleges that CRM called him 19 times whereas CRM alleges that it made 13 unanswered calls to Kongtcheu.  Pl.'s Resp. to Def.'s Statement of Facts [Dkt # 60-1] at 2.

[7] Lewis's account is based in part on CRM's internal records of its interactions with Kongtcheu.  *Id*. at 2.

with me in regard to the above referenced debt or debts . . . . By sending this letter it is my intention to stop all your calls and collection activity." *Id.* at 42. Lewis's affidavit states that, following CRM's receipt of this letter, "CRM made no further attempts to collect on the account." Lewis Aff. at 3.

On November 21, 2024, CRM sent a final letter to Kongtcheu. *See* Pl.'s Mot. for Summ. J., Ex. D at 43. CRM stated: "We have investigated your dispute in coordination with Xfinity Mobile and verified that the charges on your account are valid . . . . [T]his response is exclusively for the purpose of providing information related to your dispute. We will not initiate communication with you regarding this account any further." *Id.*

Kongtcheu argues that CRM did not substantiate the validity of the debt, as described in its letter to him, because Comcast's internal records of Kongtcheu's account do not contain an entry that reflects such an effort by CRM. Pl.'s Resp. to Def.'s Statement of Facts at 4. However, CRM maintains that it did validate the debt, an undertaking reflected in its internal "Account Information" log (the CRM Log), documenting CRM's interactions with Kongtcheu. Specifically, an entry dated November 20, 2024, states: "Written Investigation Response received on: 11/19/2024 . . . investigation has determined the charges on this account are valid." Def.'s Cross Opp'n, Ex. A-1 [Dkt # 41-4] at 6. Additionally, Lewis's affidavit cites the CRM Log and

states: "On November 19, 2024, Xfinity Mobile notified CRM the charges were valid."  Lewis Aff. at 3.

Kongtcheu alleges that CRM subsequently reported his default to credit agencies.  Pl.'s Mot. for Summ. J. at 4.  As evidence to support this claim, Kongtcheu points to the CRM Log, which includes two entries that are dated April 28, 2025.  Pl.'s Reply in Supp. of Mot. for Summ. J. [Dkt # 60] at 5-6.  These entries include Kongtcheu's address and state "BILL_TO_ADDRESS:  PHILIBERT  KONGTCHEU"  and "CES_CUSTOMER : PHILIBERT KONGTCHEU."  *See* Def.'s Cross Opp'n, Ex. A-1 at 3.  Kongtcheu alleges that the date of this entry in CRM's "Account Information" log coincides with a drop in his credit rating.  Pl.'s Reply in Supp. of Mot. for Summ. J. at 5-6.  In addition, he states in a sworn affidavit that he "submitted an online credit card application with Wells Fargo Bank, N.A," which denied the application.  Pl. Aff. [Dkt. # 46-1] at 1.  He subsequently contacted the consumer credit reporting company Experian, which informed him that "an adverse credit event related to a Comcast/CRM account appeared" on his credit report.  *Id.*  However, CRM denies reporting Kongtcheu to any credit agency.  Def.'s Cross Mot., Statement of Material Facts [Dkt # 41-2] at 3.  CRM supports its position by citing Lewis's affidavit, which attests to this fact.  Lewis Aff. at 3.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

## ANALYSIS

Kongtcheu's Complaint alleges that CRM's actions violated federal and state debt collection laws.[8] First, Kongtcheu claims that CRM violated 15

---

[8] Kongtcheu's Motion for Summary Judgment raises additional theories of liability, which are also included in the proposed Amended Complaint. However, the court's review is limited to the claims included in the original Complaint. *See supra* note 5.

U.S.C. § 1692e (2)(A), which prohibits "the false representation of . . . the character, amount, or legal status of any debt by a debt collector." Compl. at 19. While Kongtcheu disputes whether CRM definitively validated his debt with Comcast, CRM's representation of the "character," "amount," and "legal status" of the debt were consistent with the information provided to CRM by Comcast.[9]   As a result, Kongtcheu has not sufficiently alleged a violation of 15 U.S.C. § 1692e (2)(A).

Kongtcheu also claims that CRM violated 15 U.S.C. § 1692g (b) and 940 Mass. Code Regs. § 7.08, which require that a debt collector who has been timely notified by a consumer that a debt is disputed "cease collection of the debt," until the collector provides additional materials to the consumer, including verification of the debt.  Kongtcheu highlights that, among the materials that a debt collector is required to provide a debtor before resuming collection activity under 940 Mass. Code Regs. § 7.08 are "all documents, including electronic records or images, which bear the signature of the debtor and which concern the debt being collected." He

---

[9] The validity of the information provided by Comcast will be resolved in the course of the mediation taking place between Kongtcheu and the six other defendants in this case, pursuant to this court's order. *See* [Dkt # 72].

writes that CRM did not provide him with these materials.[10]  Compl. at 20. Kongtcheu does not provide evidence that CRM engaged in additional communication with him after receiving his letter asking that CRM cease its collection efforts.  As a result, CRM has not yet incurred an obligation to provide the required materials to him.  Therefore, Kongtcheu has not alleged violations of 15 U.S.C. § 1692g (b) and 940 Mass. Code Regs. § 7.08.[11]

There is no dispute of the material facts with respect to Kongtcheu's allegations against CRM.  Moreover, viewing all facts in the light most favorable to Kongtcheu, CRM is entitled to judgment as a matter of law.

**ORDER**

---

[10] In addition, 940 Mass. Code Regs. § 7.08 requires that debt collectors provide certain information within five days of initiating communication with debtors.  It is undisputed that CRM's first letter to Kongtcheu, sent on October 23, 2024, contained the required information. Pl.'s Mot. for Summ. J., Ex. D at 40.

[11] Kongtcheu's Complaint states that CRM's alleged violations of the FDCPA – specifically the alleged violations of 15 U.S.C. §§ 1692e (2)(A), 1692g (b) – mean that CRM "is co-contributor to, and jointly liable" for the alleged intentional infliction of emotional distress caused by several other defendants named in the case.  Compl. at 20.  To support this claim, Kongtcheu cites 15 U.S.C. § 1692k, which holds debt collectors who violate the FDCPA liable for "any actual damage sustained by such person as a result of such failure," and argues it applies to CRM.  However, the court does not find the underlying violations of the FDCPA that would support a theory of joint liability under 15 U.S.C. § 1692k.  (As noted previously, the court denies Kongtcheu's motion to amend the Complaint against CRM to include a direct claim of intentional infliction of emotional distress.)

For the forgoing reasons, Kongtcheu's motion for summary judgment is <u>DENIED</u>, and CRM's cross-motion for summary judgment is <u>ALLOWED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE